IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL ASSOCIATION<br>FOR LATINO COMMUNITY<br>ASSET BUILDERS,<br>5404 Wurzbach Road<br>San Antonio, TX 78238,<br><br>Plaintiff,<br><br>v.<br><br>CONSUMER FINANCIAL<br>PROTECTION BUREAU,<br>1700 G Street NW<br>Washington, DC 20552,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 1:20-cv-03122-APM<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### MOTION OF CONSUMER FINANCIAL SERVICES ASSOCIATION OF AMERICA TO INTERVENE AS DEFENDANT

Pursuant to Federal Rule of Civil Procedure 24(a)(2) and the local rules of this Court, Consumer Financial Services Association of America, Ltd. (the "Association"), moves to intervene in the above-captioned proceeding as a defendant. The undersigned counsel has conferred with counsel for Plaintiff and counsel for Defendant Consumer Financial Protection Bureau ("CFPB" or "Bureau"). Counsel for Plaintiff declined to take a position before seeing the motion. Counsel for the Bureau stated that the Bureau takes no position on the Association's motion but reserves the right to oppose the motion upon reviewing it.

### BACKGROUND

Movant is an association of companies that offer payday loans and installment loans—small, short- and medium-term loans for borrowers who often lack access to more traditional forms of credit. The Association's member companies would have been directly regulated by the

1

Bureau's Final Rule on Payday, Vehicle Title, and Certain High-Cost Installment Loans, 82 Fed. Reg. 54,472 (Nov. 17, 2017) ("2017 Rule").  That Rule's so-called "underwriting provisions" would have banned the Association's members from making payday and vehicle-title loans unless the borrower could satisfy a government-mandated test for "ability to repay."

The Association filed comments on the 2017 Rule proposal, including the proposed underwriting provisions, during the notice-and-comment period.  *See* Letter from D. Shaul to M. Jackson (Oct. 7, 2016), available at https://www.regulations.gov/contentStreamer?documentId=CFPB-2016-0025-142779&attachmentNumber=1&contentType=pdf.  After the 2017 Rule was promulgated, the Association brought suit to invalidate the 2017 Rule, including its underwriting provisions.  *See* Compl., *Consumer Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, No. 1:18-cv-00295 (W.D. Tex. filed Apr. 9, 2018) ("CFSA Compl.").  Among other things, the Association alleged that the 2017 Rule violated the Constitution, the Administrative Procedure Act, and the agency's organic statute, the Consumer Financial Protection Act.  *See id.*

Three years after the 2017 Rule was adopted, and while the Texas litigation was pending, the Bureau issued a new rule repealing the 2017 Rule's underwriting provisions.  *See* Payday, Vehicle Title, and Certain High-Cost Installment Loans, 85 Fed. Reg. 44,382 (July 22, 2020) ("Repeal Rule").  At the Texas court's instruction, the Association amended its complaint to focus on the provisions of the 2017 Rule that had not been repealed, while reserving the right to renew its constitutional, statutory, and administrative-law challenge to the underwriting provisions in the event the Bureau's revocation of those provisions is set aside.  *See* Am. Compl. ¶ 56, *Consumer Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, No. 1:18-cv-00295 (W.D. Tex. filed Aug. 28, 2020).

In this action, Plaintiff seeks vacatur of the Repeal Rule—and reinstatement of the underwriting provisions—under the Administrative Procedure Act ("APA"). The Association now moves to intervene as of right, or alternatively by permission, in defense of the Repeal Rule.

## ARGUMENT

Under Federal Rule of Civil Procedure 24(a)(2), parties may intervene as of right, upon "timely motion," if they claim "an interest relating to the property or transaction" at stake in the case and if the outcome "may as a practical matter impair" their ability to protect that interest, "unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). The Association meets these criteria as well as the further requirement sometimes enforced by courts in this Circuit that would-be intervenors establish their own Article III standing. *Deutsche Bank Nat'l Tr. Co. v. FDIC*, 717 F.3d 189, 193 (D.C. Cir. 2013). The Association also meets Rule 24(b)(1)'s criteria for permissive intervention because it has claims that share "question[s] of law and fact" with Plaintiff's challenge to the repeal of the underwriting provisions.

### A. The Association Has Standing To Intervene.

The D.C. Circuit has required would-be intervenors to establish Article III standing. *Deutsche Bank*, 717 F.3d at 193. Here, because the Association seeks to intervene as a defendant, the question is whether it would be injured by a ruling for the plaintiff. *See Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 316 (D.C. Cir. 2015).

That being so, the Association clearly has standing to intervene to challenge Plaintiff's efforts to revive the 2017 Rule's underwriting provisions, just as it had unquestioned standing to challenge *implementation* of those provisions. *See* CFSA Compl. "Article III requires a showing of injury-in-fact, causation, and redressability." *Deutsche Bank*, 717 F.3d at 193. When, as here, a party is an "'object of the action (or forgone action) at issue'—as is the case usually in review of a rulemaking . . . —there should be 'little question that the action or inaction has caused [it] injury,

3

and that a judgment preventing or requiring the action will redress it.'" *Sierra Club v. EPA*, 292 F.3d 895, 899–900 (D.C. Cir. 2002) (citation omitted).  In this case, if Plaintiff prevails in its effort, the Association's members[1] will be subject to the 2017 Rule's underwriting provisions.  Those provisions would clearly decimate or completely destroy the Association's members' payday-lending businesses:  the Bureau itself admitted that the provisions would have eliminated more than 90% of the loans made and revenues earned by lenders like the Association's members. 82 Fed. Reg. at 54,826; *see also id.* at 54,817 (recognizing that, as a result of the underwriting provisions, "many current providers" are "expected" to shut down or otherwise "exit" the market). Even those members who could survive would be subject to draconian restrictions that would severely burden their lending practices.  It follows that granting relief to Plaintiff would "cause[] [the Association's members] injury," and a "judgment preventing" such relief would "redress" (or prevent) any injury.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992).  Thus, just as no one challenged the Association's standing to challenge the 2017 Rule's underwriting provisions because of the onerous regulatory and financial burdens they imposed, there can be no rational challenge to the Association's standing to prevent the same underwriting provisions from being revived.

      **B.**      **The Association Satisfies the Criteria for Intervention As of Right.**

In addition to possessing standing, the Association has grounds to intervene under Rule 24(a)(2). Under that Rule, the D.C. Circuit has identified four criteria for intervention as of right: "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally

---

[1] The Association here asserts standing on behalf of its members. *See Equal Rights Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1138 (D.C. Cir. 2011) ("An organization . . . can assert standing on its own behalf, on behalf of its members or both."); *Abigail All. for Better Access to Developmental Drugs v. Eschenbach*, 469 F.3d 129, 132 (D.C. Cir. 2006) ("An organization can have standing . . . on behalf of its members.").

protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008) (citation omitted).  The Association meets all four criteria.

### 1. Timeliness

The Association's motion is timely.  Timeliness is judged by the totality of the circumstances and with an emphasis on, among other things, the "time elapsed since the inception of the suit" and "the probability of prejudice to those already parties in the case." *United States v. British Am. Tobacco Austl. Servs. Ltd.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006).  This action was filed only 63 days ago, and the deadline for the Bureau to answer Plaintiff's complaint is still two weeks away.  This first requirement for intervention as of right is therefore satisfied.

### 2. Possible Impairment to Legally Protected Interest

The Association also satisfies the second and third factors:  a legally protected interest that would be impaired by an adverse decision.  For the reasons already set forth with respect to Article III standing, the Association's interest would obviously be severely impaired if Plaintiff obtained the relief it seeks:  revival of provisions of the 2017 Rule that all agree would dramatically alter and burden the Association's members' lending practices, requiring the vast majority of them to "exit the business."  Since the Association satisfies the injury-in-fact requirement for Article III standing, that alone suffices to establish a legally protected interest for purposes of Rule 24(a). *See Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998).

More generally, the D.C. Circuit will recognize a legally protected interest and threat of impairment "where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit." *Crossroads*, 788 F.3d at 317, 320. Here, as noted, the Association's members benefit substantially from the Bureau's repeal of the

underwriting provisions, Plaintiff challenges that repeal, and an unfavorable decision would, if it gave Plaintiff everything it seeks, expose the Association's members to severe and costly regulations. Their interest is clear.

### 3. Lack of Assured Adequate Representation

Finally, the fourth factor, inadequacy of representation of the party's interests, is satisfied. To prevail on this factor, a movant need only show "that representation of his interest" by the other parties "'*may* be' inadequate," *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) (emphasis added). And "the burden of making that showing should be treated as minimal," *id.*, "not onerous," *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (citation omitted). Mere "general agreement" between an existing party's positions and those of a would-be intervenor is not enough to ensure adequate representation. *Id.* at 737. In particular, the D.C. Circuit "look[s] skeptically on government entities serving as adequate advocates for private parties." *Crossroads*, 788 F.3d at 321. Above all, "this circuit recogniz[es] the inadequacy of governmental representation of the interests of private parties" where those private parties have a financial stake in an outcome but the government does not. *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986). For while governmental entities are "charged by law with representing the public interest of [the] citizens," private corporations are "seeking to protect a more narrow and 'parochial' financial interest not shared by the citizens." *Id.* at 192–93. Under such circumstances, "no presumption exists that the [government] will adequately represent" the private party's interests. *Id.* at 193.

That is the case here. As private companies that make payday loans, the Association's members would definitely suffer grievous financial harm from the reinstatement of the

6

underwriting provisions sought here.  The Bureau would not.  This rebuts any suggestion that the Bureau could adequately represent the Association's interests.

While this direct financial interest is alone sufficient, case law confirms that the adequacy of representation factor is satisfied here.  In *Fund for Animals*, the intervenor's interests were found to diverge from those of the federal defendant because the government "had no duty to vindicate the rights of the Mongolian people," whose interests the intervenor proposed to represent.  *Alfa Int'l Seafood v. Ross*, 321 F.R.D. 5, 9 (D.D.C. 2017) (citing *Fund for Animals*, 322 F.3d at 736–37).  Here the government surely has no duty to vindicate the interests to be represented by the Association—namely, its members' private financial and commercial interests in operating free of the underwriting provisions.  Likewise, just as "[t]he court [in *Crossroads*] found that the federal defendant could not adequately represent the proposed intervenors' interests because . . . the [federal agency] might engage in future adversarial proceedings against the intervenor should its decision [which was being challenged in that case] be reversed," *id.* (citing *Crossroads*, 788 F.3d at 321), here reversal of the Bureau's Repeal Rule—and reinstatement of the underwriting provisions—would make the Bureau directly adversarial to the intervenor, as the Bureau would presumably begin enforcing the revived regulations.  Thus, precedent makes it crystal clear that the Bureau cannot adequately represent the Association's interests here.

Finally, there are special reasons to think that the Bureau's advocacy here will not fully represent the Association's interests.  After all, the underwriting provisions were promulgated by a Democratic administration,[2] they were repealed by a Republican administration, and now a new

---

[2] The 2017 Rule was promulgated in November 2017 by the prior administration's CFPB Director, who at the time was insulated from removal by the President.  The Supreme Court subsequently invalidated that removal restriction, making the current Director removable by the President at will.  *See Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020).

Democratic administration has been elected after promising to increase restrictions on "banks and lenders," Biden-Sanders Unity Task Force Recommendations 18–19, https://joebiden.com/wp-content/uploads/2020/08/UNITY-TASK-FORCE-RECOMMENDATIONS.pdf (last visited Dec. 30, 2020). This "change in the Administration raises 'the possibility of divergence of interest.'" *W. Energy Alliance v. Zinke*, 877 F. 3d 1157, 1169–70 (10th Cir. 2017) (citation omitted).

### C. The Association satisfies the criteria for permissive intervention.

Even if a party lacks a *right* to intervene, a court may grant it permission to intervene if it files a "timely" motion showing that it "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1). The Association satisfies these criteria.

First, this motion is timely, as shown above. *See supra* p. 5.

Second, the Association has—and, indeed, has *already pressed in court*—claims against enforcement of the payments provisions that share common questions of law or fact with Plaintiff's attempt to revive those provisions in this challenge to their repeal. As noted, the Association in another case argued that the payments provisions were arbitrary and capricious and overstepped the Bureau's authority under 12 U.S.C. § 5531(b) to ban financial products "as unlawful unfair, deceptive, or abusive." *See* CFSA Compl. The rule repealing those provisions, challenged here, was based on some of the very same arguments. *Compare id.* at 10–11 (challenging the payments provisions' assumptions that the practices banned by them were unfair or abusive, imposed costs outweighing any benefits, or posed risks that consumers did not understand), *with* 85 Fed. Reg. 44,382–83 (same). Plaintiff's challenge here rejects these positions, *see* Compl. at 2, so there is no doubt that some of the same legal and factual questions will arise here as arose in litigation initiated by the Association. Though separate litigation making the same claims is hardly *required* for permissive intervention, its presence here reinforces the overlap of legal and factual questions

between this action and claims possessed by the Association. *See NYC C.L.A.S.H., Inc. v. Carson*, No. CV 18-1711, 2019 WL 2357534, at *3 (D.D.C. June 4, 2019) (finding common questions of law and fact where would-be intervenor was subject to the regulation being challenged and shared the claim, raised in the litigation at hand, that the regulation was arbitrary and capricious). Thus, the case for permissive intervention is strong.

## CONCLUSION

For the foregoing reasons, the Association respectfully requests that this Court grant its motion to intervene as a defendant.

Dated:   December 31, 2020                              Respectfully submitted,


  /s/ Christian G. Vergonis
Michael A. Carvin (D.C. Bar No. 366784)
Christian G. Vergonis (D.C. Bar No. 483293)
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001
Telephone: (202) 879-3939

*Counsel for Defendant-Intervenor*