UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NATIONAL ASSOCIATION FOR LATINO COMMUNITY ASSET BUILDERS, | ) ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) |  |
| CONSUMER FINANCIAL PROTECTION BUREAU, | ) ) ) ) | Case No. 20-cv-3122 (APM) |
| Defendant, | ) ) |  |
| and | ) ) |  |
| COMMUNITY FINANCIAL SERVICES ASSOCIATION OF AMERICA, | ) ) ) ) |  |
| Intervenor-Defendant. | ) ) |  |

**MEMORANDUM OPINION**

**I.**

In 2017, Defendant Consumer Financial Protection Bureau ("CFPB") enacted a rule designed to protect consumers from certain practices in the markets for payday and vehicle-title loans (the "2017 Rule"). These types of financial instruments typically involve high interest rates and short maturity periods that are collateralized by the borrower's next paycheck or car title. In the 2017 Rule, CFPB explained that many consumers are unable to repay such loans and so "face one of three options when an unaffordable loan payment is due: Take out additional covered loans . . . , default on the covered loan, or make the payment on the covered loan and fail to meet basic living expenses or other major financial obligations." 82 Fed. Reg. 54,472, 54,472 (Nov. 17, 2017) (to be codified at 12 C.F.R. pt. 1041). Many people take the first option: taking out a new

loan to repay or reduce the old one. As a result, "a substantial population of consumers ends up in extended loan sequences of unaffordable loans." *Id.* Among other key provisions, the 2017 Rule would prohibit the practice of no-underwriting lending, in which lenders offer loans without first assessing whether prospective borrowers can repay them. But in 2020, before the rule became effective and after CFPB had transitioned to new leadership, CFPB revoked key provisions of the 2017 Rule (the "2020 Repeal Rule"), preventing some of its core elements from going into place—including, notably, the prohibition on no-underwriting lending.

Plaintiff National Association for Latino Community Asset Builders ("NALCAB") filed this action challenging the 2020 Repeal Rule's revocation of the planned prohibition on no-underwriting lending. NALCAB is a "nonprofit[] membership association of mission-driven community and economic development organizations that serve diverse Latino communities" across the country. First Am. Compl. for Declaratory & Injunctive Relief, ECF No. 26 [hereinafter First Am. Compl.], ¶ 6. It "works to strengthen the economy by advancing economic mobility in Latino communities." *Id.* NALCAB brought this action because, it says, the 2020 Repeal Rule "makes NALCAB's work more difficult": "[a]s a result of the no-underwriting lending permitted by the Repeal Rule and the harms that such lending causes, organizations creating and strengthening financial capability programs need more assistance from NALCAB[] to be able to help families avoid or address unaffordable payday and title loans." *Id.* ¶ 7.

Now before the court are two motions to dismiss: one filed by the CFPB and the other filed by Intervenor-Defendant Consumer Financial Services Association of America ("CFSA").[1] Def. CFPB's Mot. to Dismiss Pl.'s Am. Compl. for Lack of Subject-Matter Jurisdiction, ECF No. 32 [hereinafter CFPB's Mot.]; Intervenor-Def. CFSA's Mot. to Dismiss, ECF No. 33 [hereinafter

---

[1] The court granted CFSA's motion to intervene in January 2021. Minute Order, Jan. 18, 2021.

CFSA's Mot.].[2]  Both CFPB and CFSA urge the court to dismiss this action for lack of standing. CFPB focuses its arguments on the injury requirement for Article III standing; CFSA joins those arguments and raises an additional argument regarding redressability.  For the reasons that follow, the court grants the motions.

## II.

A motion to dismiss for lack of standing is properly considered under Rule 12(b)(1), as lack of standing is a "defect[] in subject matter jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987); *M.J. v. District of Columbia*, 401 F. Supp. 3d 1, 7–8 (D.D.C. 2019).  When deciding a motion under Rule 12(b)(1), a court must accept all well-pleaded factual allegations in the complaint as true.  *See Jerome Stevens Pharms., Inc. v. FDA.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).  Because the court has "an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority," however, the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  *Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (internal quotation marks omitted).  To that end, the court may consider "such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000).  Thus, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Coal. For Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (internal quotation marks omitted).

---

[2] CFPB filed an initial motion to dismiss, Mot. to Dismiss for Lack of Subject Matter Jurisdiction, ECF No. 15, which the court denied as moot after NALCAB filed its First Amended Complaint, the operative complaint here.  First Am. Compl.; Minute Order, Feb. 3, 2021.

III.

As the party bringing suit, NALCAB bears the burden of establishing standing. *Attias v. Carefirst, Inc.*, 865 F.3d 620, 625 (D.C. Cir. 2017). At the motion-to-dismiss stage, "plaintiffs are required only to state a plausible claim that each of the standing elements is present." *Id.* (emphasis omitted) (internal quotation marks omitted). NALCAB asserts both organizational standing on its own behalf and associational standing on behalf of its members. *See* First Am. Compl. ¶¶ 6–9; Pl.'s Combined Opp'n to Def.'s Mot. & Intervenor-Def.'s Mot., ECF No. 35 [hereinafter Pl.'s Opp'n], at 14, 21. The court will consider each in turn.

A.

If an organization "claims standing . . . on its own behalf, . . . it must make the same showing required of individuals: an actual or threatened injury in fact that is fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by a favorable court decision." *Am. Soc'y for the Prevention of Cruelty to Animals v. Feld Ent., Inc.*, 659 F.3d 13, 24 (D.C. Cir. 2011). An injury in fact must be "concrete," "particularized," and "actual or imminent." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 914 (D.C. Cir. 2015) (internal quotation marks omitted). To demonstrate such an injury, organizational plaintiffs must show "more than simply a setback" to their "abstract social interests" or a "frustration of [their] purpose." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *Food & Water Watch*, 808 F.3d at 919. The D.C. Circuit applies a two-part test to evaluate whether an organization's alleged injury is cognizable: First, the challenged conduct must have "injured the organization's interests," and second, the organization must have "used its resources to counteract that harm." *PETA v. U.S. Dep't of Agric.*, 797 F.3d 1087, 1094 (D.C. Cir. 2015) (internal quotation marks omitted).

4

For the first step of the inquiry, the question is whether "the defendant's conduct perceptibly impaired the organization's ability to provide services"—that is, whether the challenged "conduct causes an inhibition of the organization's daily operations." *Food & Water Watch*, 808 F.3d at 919 (internal quotation marks and alteration omitted). NALCAB's account of its injury is as follows: NALCAB assists its member organizations in developing financial-capability programs, which "aim to enable families to reduce debt, increase savings, build credit, and ultimately, to thrive financially, by being able to meet immediate financial needs, build assets for the future[,] and create intergenerational wealth." Pl.'s Opp'n at 21 (internal quotation marks omitted); Pl.'s Opp'n, Decl. of Fernando Garcia, ECF No. 35-1 [hereinafter Garcia Decl.], ¶ 10. According to NALCAB, payday loans "threaten consumers' abilities even to stabilize their finances" by "push[ing] borrowers into reborrowing cycles"; when that happens, "organizations serving those consumers need *additional* capability[] to be able to help their clients avoid or address the harms caused by such lending." Pl.'s Opp'n at 21. They therefore "seek extra training and technical assistance from NALCAB on strategies specific to such loans," and NALCAB must "devote more time . . . to planning and delivering training on such topics" and "provide more technical assistance than it would otherwise." *Id.* at 21–22. In addition, according to NALCAB, "no-underwriting lending reduces the effectiveness of NALCAB's other services" because "[w]ithout strategies to address unaffordable payday and title loans, NALCAB grantees serving communities struggling with such loans cannot effectively use NALCAB's grants to build strong programs." *Id.* at 22. That is because "consumers trapped in unaffordable payday or title loans generally need to address those loans *first*" and so "organizations may not be able to implement other programs fully *until* they have strategies to help clients find a way out of payday or title debt." *Id.* So, in short, NALCAB claims that the 2020 Repeal Rule impairs its financial-capability

5

services "by increasing organizations' need for NALCAB services and reducing the effectiveness of other NALCAB efforts." *Id.* at 21.

This account of the 2020 Repeal Rule's impact on NALCAB does not establish a "concrete and demonstrable injury to its activities." *Env't Working Grp. v. U.S. Dep't of Agric*, 301 F. Supp. 3d 165, 170–71 (D.D.C. 2018) (internal quotation marks and alteration omitted).  NALCAB's account of the harm it has experienced because of the 2020 Repeal Rule does not extend beyond "mere diversion of resources to advance the [organization's] advocacy mission," which is "insufficient to confer standing." *Weingarten v. Devos*, 468 F. Supp. 3d 322, 334 (D.D.C. 2020); *see also New Eng. Anti-Vivisection Soc'y v. U.S. Fish & Wildlife Serv.*, 208 F. Supp. 3d 142, 167 (D.D.C. 2016) ("The D.C. Circuit has made clear that such budgetary choices merely reflect shifting priorities regarding the expenditure of resources on advocacy[] . . . ." (internal quotation marks omitted)).  Stated simply, NALCAB's asserted injury is that member organizations need more training and technical assistance from NALCAB than they would without the 2020 Repeal Rule (that is, with the 2017 Rule in place)—and that NALCAB must expend its resources accordingly.  But NALCAB's "allegation that it has had to redirect its resources from other projects . . . confuses the two prongs of the injury-in-fact inquiry." *Id.* (internal quotation marks omitted).  Expenditure of resources in response to agency action alone is not enough to establish a cognizable injury because it leaves step one of the inquiry unanswered.  Case law in this Circuit makes clear that there must be a separate perceptible impairment of the organization's ability to provide services—something that makes it more difficult for the organization to conduct its activities.  *See Food & Water Watch,* 808 F.3d at 921; *Weingarten*, 468 F. Supp. 3d at 334; *New Eng. Anti-Vivisection Soc'y*, 208 F. Supp. 3d at 167.  NALCAB has not plausibly alleged such an impairment.

The D.C. Circuit's opinion in *Food & Water Watch* is instructive.  In that case, the plaintiff organization asserted that it had standing to challenge a rule establishing new—and in the organization's view, less safe—poultry-inspection procedures because the rule meant the organization "would have to increase the resources that it spen[t] on educating the general public and its members" about the impact of the new rule on poultry safety.  808 F.3d at 920.  This, the D.C. Circuit held, was inadequate to establish a cognizable injury, because the organization had not made any allegations "indicat[ing] that [the plaintiff's] organizational activities [had] been perceptibly impaired in any way."  *Id.* at 921.  The organization did not allege, for example, that the rule "limit[ed] its ability to seek redress for a violation of law" or "restrict[ed] the flow of information that [the organization] uses to educate its members."  *Id.*

Like the plaintiff organization in *Food & Water Watch*, NALCAB attempts to demonstrate an injury to its activities through an increase in educational efforts that it attributes to the challenged rule.  Specifically, NALCAB alleges that implementation of the 2020 Repeal Rule will require it to continue expending resources educating its member organizations and their staff about issues related to no-underwriting lending.  First Am. Compl. ¶ 8.  Such a theory of cognizable injury to support organizational standing is squarely foreclosed by numerous cases within this Circuit.  *See Food & Water Watch*, 808 F.3d at 921; *see also, e.g.*, *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995); *Env't Working Grp.*, 301 F. Supp. 3d at 172 (concluding that an organization's use of resources to educate its members and others does not perceptibly impair its activities); *Ctr. for Responsible Sci. v. Hahn*, 809 F. App'x 10, 12 (D.C. Cir. 2020).

NALCAB's attempt to distinguish *Food & Water Watch* is not persuasive.  NALCAB states, in circular fashion, that the D.C. Circuit concluded that the plaintiff lacked standing "not

7

Case 1:20-cv-03122-APM   Document 44   Filed 01/14/22   Page 8 of 13

because [it was] spending money on education" but because "plaintiff[] failed to show [its] services were impaired." Pl.'s Opp'n at 25. But then why did the D.C. Circuit conclude that the plaintiff had failed to show its services were impaired? The answer, of course, is that it was because the plaintiff had alleged only an increase in its educational efforts and not a concrete way in which the challenged rule made it more difficult for the plaintiff organization to engage in those efforts. *Food & Water Watch*, 808 F.3d at 921. The court noted the distinction between "organizations that allege that their activities have been impeded from those that merely allege that their mission has been compromised" and, implicitly, placed the plaintiff in the latter category. *Id.* at 919 (internal quotation marks omitted). NALCAB, based on its pleadings and declarations, belongs in the same category.

NALCAB seeks refuge in *PETA v. USDA*, but that case does not stand for the general proposition that increased educational expenditures qualify as a cognizable organizational injury. Rather, the critical facts in that case were that the challenged action cut off the plaintiff's avenue for redress of bird mistreatment and denied access to information that the plaintiff could use to raise public awareness. 797 F.3d at 1095; *see Citizens for Responsibility & Ethics in Wash. v. U.S. Off. of Special Couns.*, 480 F. Supp. 3d 118, 130–31 (D.D.C. 2020) (reading *PETA* to hinge on allegations that the challenged agency action limited redress and access to information); *Ctr. for Biological Diversity v. Bernhardt*, 442 F. Supp. 3d 97, 109 (D.D.C. 2020) (same); *Ctr. for Democracy & Tech. v. Trump*, No. 20-cv-1456 (TNM), 2020 WL 7318008, at *5 (D.D.C. Dec. 11, 2020) (same).

NALCAB also relies on *Fair Employment Council of Greater Washington, Inc. v. BMC Marketing Corp.*, 28 F.3d 1268 (D.C. Cir. 1994), and *Spann v. Colonial Village, Inc.*, 899 F.2d 24 (D.C. Cir. 1990), to argue that "[t]he D.C. Circuit . . . has repeatedly held that organizations have

8

standing to challenge actions that impair educational activities (and necessitate spending on educational activities to counteract such harm)." Pl.'s Opp'n at 23. But those cases involved private litigation challenging a defendant's civil rights practices. Court have consistently declined to extend their holdings to cases, as here, contesting government action. *See, e.g.*, *Nat'l Taxpayers Union*, 68 F.3d at 1434; *Food & Water Watch*, 808 F.3d at 920; *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 12 (D.C. Cir. 2011).

NALCAB has not pointed to another way in which the 2020 Repeal Rule perceptibly impairs its ordinary operations. It argues that, because of the 2020 Repeal Rule, it will have to offer trainings regarding consumer finance and financial coaching as well as technical support to its member organizations, but based on its description of its mission and programming, NALCAB will do that whether or not the 2020 Repeal Rule is in place. *See* First Am. Compl. ¶¶ 6, 8. The programming that NALCAB attempts to use to establish injury is "exactly what [it] always do[es]." *Env't Working Grp.*, 301 F. Supp. 3d at 172; *see also Ctr. for Democracy & Tech.*, 2020 WL 7318008, at *4 ("[Plaintiff organization] cannot assert Article III standing by claiming that the activities that it would otherwise engage in now injure it."). The 2020 Repeal Rule does not require NALCAB to deviate in a "meaningful way from its standard programmatic efforts that existed before the Rule was promulgated." *Int'l Acad. of Oral Med. & Toxicology v. FDA*, 195 F. Supp. 3d 243, 259 (D.D.C. 2016). And ordinary expenditures, like those highlighted by NALCAB, do not constitute a cognizable injury. *See Nat'l Taxpayers Union*, 68 F.3d at 1434 ("[Plaintiff] cannot convert its ordinary program costs into an injury in fact . . . ."); *Int'l Acad. of Oral Med. & Toxicology*, 195 F. Supp. 3d at 259 (finding no cognizable injury where organization's activities were "not a diversion from, but rather a continuation of, [its] ordinary educational, advocacy, and training activities" (internal quotation marks omitted)); *Nat'l Ass'n of Home Builders*, 667 F.3d at

9

12 (requiring "operational costs beyond those normally expended to carry out [the organization's] advocacy mission" (internal quotation marks omitted)).

NALCAB resists this line of cases, arguing that courts in this Circuit have found cognizable injuries where "clients or members of a community need *more* of an organization's resources" because of the challenged actions and urging this court to do the same here.  Pl.'s Opp'n at 23.  But the cases NALCAB cites do not support such a conclusion.  As noted above, *Spann* and *Fair Employment Council* are limited to the private-litigation context.  *Action Alliance of Senior Citizens of Greater Philadelphia v. Heckler* and *Whitman-Walker Clinic, Inc. v. Department of Health and Human Services*, like *Food & Water Watch* and unlike this case, involved challenges to regulations that denied the plaintiff organizations access to information and/or avenues of redress and so do not buttress NALCAB's position.  789 F.2d 931, 937 (D.C. Cir. 1986); 485 F. Supp. 3d 1, 21 (D.D.C. 2020) (finding cognizable injury where challenged rule would make patients not "fully transparent with" medical providers about medical histories and so impair medical providers' abilities to serve patients).  Nor do *Capital Area Immigrants' Rights Coalition* and *Northwest Immigrant Rights Project* help NALCAB.  The plaintiffs in those cases, organizations providing legal services to asylum applicants and immigrants, challenged rules that made applying for asylum and particular kinds of immigration status more difficult or costly.  The plaintiff organizations were able to show that the increased costs would directly reduce their capacity and ability to provide legal services to their clients.  *Cap. Area Immigrants' Rts. Coal. v. Trump*, 471 F. Supp. 3d 25, 38–39 (D.D.C. 2020); *Nw. Immigrant Rts. Project v. U.S. Citizenship & Immigr. Servs.*, 496 F. Supp. 3d 31, 41 (D.D.C. 2020).  Their cognizable injuries were not premised, as here, merely on a desire to allocate resources to other organizational purposes.  *See* Garcia Decl. ¶¶ 26–27.  Finally, in *Garnett v. Zeilinger*, 485 F. Supp. 3d 206 (D.D.C. 2020), the

court found that the challenged regulation inhibited the plaintiff organization's daily operations when it prompted a sharp, concrete increase in demand for all of the organization's services and tangible goods at the same time. *Id.* at 216–17. NALCAB is not in a comparable situation to the organizational plaintiff in *Garnett*.

In sum, NALCAB cannot escape the conclusion that, under this Circuit's current standing doctrine, its account of the 2020 Repeal Rule's effects does not amount to a cognizable organizational injury. Because NALCAB has not sufficiently alleged an injury to its interests, the court does not reach the second prong of the cognizable-injury inquiry. *Food & Water Watch*, 808 F.3d at 919.

**B.**

NALCAB separately asserts associational standing on behalf of its members. To establish associational standing, NALCAB must demonstrate (1) "that at least one member would have standing under Article III to sue in his or her own right"; (2) "that the interests it seeks to protect are germane to its purposes"; and (3) "that neither the claim asserted nor the relief requested requires that an individual member participate in the lawsuit." *Nat. Res. Def. Council v. EPA*, 489 F.3d 1364, 1370 (D.C. Cir. 2007); *see Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Here, only the first requirement is disputed. NALCAB asserts that one of its members, Mission Economic Development Agency ("MEDA"), itself has organizational standing; therefore, the court conducts the same inquiry with respect to MEDA as it has regarding NALCAB's organizational standing. The court concludes that MEDA, like NALCAB, has not adequately demonstrated injury to its interests to establish an organizational injury.

MEDA is a nonprofit organization that "works to advance a national equity movement by building Latino prosperity, community ownership, and civic power." First Am. Compl. ¶ 9.

11

It seeks to help "Latino families . . . thriv[e] economically," and to that end, it "offers free programs that include one-on-one financial coaching for clients," including those with unaffordable payday loans.  *Id.*  NALCAB argues that MEDA has a cognizable injury stemming from the 2020 Repeal Rule because it "caus[es] more MEDA clients to need more financial coaching than they would otherwise" and so perceptibly impairs the organization's work and injures its interests.  Pl.'s Opp'n at 14.  More specifically, the 2020 Repeal Rule, by allowing no-underwriting lending, leads MEDA clients to be "trapped in multiple" loans that require "more coaching than a single loan or an underlying budget shortfall."  *Id.*  These clients "also need extra coaching to address reborrowing cycles and the urgent risk of payday lenders seeking to debit their bank accounts of needed funds."  *Id.*  A declaration from MEDA states that "MEDA estimates that financial capability coaching clients stuck in unaffordable payday loans need, on average, three more weekly coaching sessions than typical clients without unaffordable payday loans." Pl.'s Opp'n, Decl. of Luis Granados, ECF No. 35-2, ¶ 15.

MEDA's asserted injury is subject to the same shortcomings as NALCAB's.  The claimed injury to MEDA's interests is effectively an increased demand for its services and a reallocation of resources to meet that demand, but these services are a continuation of the same services MEDA would provide absent the 2020 Repeal Rule.  For the reasons described above, such allegations are insufficient.  NALCAB has identified nothing about the 2020 Repeal Rule that makes MEDA's activities more difficult; lacking such an impairment, MEDA asserts only a frustration of its purpose, which cannot support standing.  *See Food & Water Watch,* 808 F.3d at 921; *Ctr. for Responsible Sci.*, 809 F. App'x at 12.  NALCAB premises much of its argument as to MEDA on the assertion that clients trapped in unaffordable payday loans require on average three more weekly coaching sessions than other clients.  *See* Pl.'s Opp'n at 14–15.  But allowing an

organization's increased resource expenditure because of an increased demand for its services to satisfy the impairment prong of the organizational-injury analysis subsumes the second prong and renders it superfluous. *See Weingarten*, 468 F. Supp. 3d at 334. Moreover, the court finds persuasive CFPB's argument that, if MEDA's account of its injury met the D.C. Circuit's test, *Food & Water Watch* would have come out the other way. *See* CFPB's Reply in Supp. of its Mot., ECF No. 39 [hereinafter CFPB's Reply], at 13. In that case, the plaintiff organization alleged that the regulations it challenged created a heightened demand for its services (public health advocacy) and that it would, as a result, expend resources to meet that need. As CFPB notes, "[i]f the fact that the plaintiff expended resources in response to a social need that resulted from agency inaction was enough for standing[,] the D.C. Circuit would have found standing" in *Food & Water Watch*. *Id.* It did not, and this court is bound by that precedent.

As with NALCAB, the court need not reach the second prong of the cognizable-injury inquiry for MEDA as it has not sufficiently alleged an injury to its interests. *Food & Water Watch*, 808 F.3d at 919. And because neither NALCAB nor MEDA has demonstrated an adequate injury for organizational standing purposes, the court must dismiss the complaint.[3]

**IV.**

For the foregoing reason, the court grants CFPB and CFSA's motions to dismiss. A separate final, appealable order accompanies this Memorandum Opinion.

Dated: January 14, 2022

Amit P. Mehta
United States District Court Judge

---

[3] Because the court resolves the motions to dismiss on the question of injury—and specifically, the question whether NALCAB and MEDA have adequately alleged cognizable organizational injuries under the D.C. Circuit's two-pronged test—the court does not reach the question of redressability as to either entity. The court also does not address arguments regarding the speculativeness of NALCAB's and MEDA's asserted injuries.